# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00689-CV

**In re R. Lowell Thompson**

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## D I S S E N T I N G   O P I N I O N

In this case, the Relatives of Cameron Todd Willingham have sought to invoke a court of inquiry regarding Willingham's conviction in Navarro County and his ultimate execution. In furtherance of that goal, the Relatives filed with Judge Baird a petition to convene a court of inquiry in Travis County. After the petition was filed, Judge Baird scheduled a hearing and sent letters to various individuals, including some government officials, informing them of the hearing and inviting them to attend and to present evidence regarding the matter. Shortly thereafter, Lowell Thompson, who is the district attorney from the county in which Willingham was convicted, filed a motion to recuse Judge Baird from the matter. When Judge Baird concluded that the district attorney did not have standing to seek his recusal, the district attorney filed this writ of mandamus asking this Court to order Judge Baird to either recuse himself or refer the recusal matter to the presiding judge of the administrative judicial district. *See* Tex. R. Civ. P. 18a(c). After reviewing the district attorney's petition and the response by the Relatives, the majority in this case determines that they have jurisdiction to issue a writ in this case and also orders Judge Baird to either recuse himself or refer the matter in accordance with the rules of civil procedure. For the reasons that

follow, I respectfully dissent from the opinion by the majority and would instead deny the petition for the writ of mandamus because I believe that this Court does not have jurisdiction in this case.

Before addressing the petition, I believe that a brief discussion regarding the evolution of courts of inquiry would be helpful. Courts of inquiry have a long and troubled history in Texas jurisprudence. *See Eagle Printing Co. v. Delaney*, 671 S.W.2d 883 (Tex. Crim. App. 1984). A court of inquiry is a procedural device employed "to ascertain if illegal activity has occurred or is occurring." *Jones v. Westergren*, 771 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1989, no writ). At the risk of understating the matter, courts of inquiry are "extraordinary proceeding[s]." *See id.* at 883. In the past, the procedures routinely used during courts of inquiry were fundamentally unfair and abusive in nature. *Id.* at 886 (noting that procedures utilized were shocking in nature); *see also Martin v. State*, 382 U.S. 928, 929 (1965) (noting that there are "grave constitutional questions" raised by conducting courts of inquiry); *Martin v. Beto*, 397 F.2d 741, 749 (5th Cir. 1968) (Thornberry, J., concurring) (reflecting that procedures used in courts of inquiry present serious constitutional concerns). Some of the questionable procedures employed included denying an accused of the right to counsel, refusing to inform the accused of the nature of the accusation against him, and prohibiting an accused from presenting a defense, calling his own witnesses, or cross-examining the witnesses that were called. *See Ex parte Smith*, 383 S.W.2d 401, 403-04 (Tex. Crim. App. 1964) (concluding that procedures employed during court of inquiry were unconstitutional); *McClelland v. Briscoe*, 359 S.W.2d 635, 638 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.) (stating that procedures used were "shocking and . . . at variance with our conception of the minimum requirements of fair play, within the meaning of due process law"); *see also Westergren*,

2

771 S.W.2d at 671 (addressing mandamus in which relator asserted that judge who called court of inquiry was "interested in the outcome of the proceeding" and was accuser in proceeding but was not subject to cross-examination). Furthermore, "the absence of rules of procedure" for courts of inquiry presented an "opportunity for abuse of power," and courts of inquiry provided little protection for those "unjustly accused." *Briscoe*, 359 S.W.2d at 640 (Coleman, J., concurring); *Neal v. Brim*, 506 F.2d 6, 7 n.1 (5th Cir. 1975) (explaining that when court of inquiry is called, rules of evidence and other procedural safeguards are suspended). The unfettered discretion employed during these proceedings was further compounded by the publicity and media attention that these proceedings engendered. *See, e.g.*, *Beto*, 397 F.2d at 751 (Thornberry, J., concurring) (calling court of inquiry "carnival proceeding" and noting that type of publicity received seemed "at variance with elemental requirements of fair play"). In light of these inequities, members of the judiciary called for legislative reform, and a committee of the State Bar asked for the abolishment of courts of inquiry in their entirety. *Eagle Printing Co.*, 671 S.W.2d at 886.

In response to these concerns, the legislature enacted chapter 52 of the code of criminal procedure and expressly set out the manner in which courts of inquiry may be invoked, the limited and narrow function of courts of inquiry, and the rights and responsibilities of those involved in calling, presiding over, and attending a court of inquiry. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.01-.09, 1965 Tex. Gen. Laws 317, 559-60. Notably, the legislature limited the officials who may convene a court of inquiry to district judges. *See id.* art. 52.01; *see also Eagle Printing Co.*, 671 S.W.2d at 886 (explaining that legislature concluded that courts of inquiry could

3

still serve useful purpose if presiding officers were limited to district court judges and if procedural aspects were explicitly "spelled out").

As originally enacted, chapter 52 allowed a district judge who "has good cause to believe that an offense has been committed" to convene a court of inquiry and to "summon and examine any witness in relation thereto." *See* Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.01-.09, 1965 Tex. Gen. Laws 317, 559-60; *see also Neal*, 506 F.2d at 7 (pertaining to court of inquiry called by judge who had cause to believe that crime had occurred); *Westergren*, 771 S.W.2d at 670 (same). In addition, the original version of chapter 52 also exhaustively set out the manner in which evidence may be taken at a court of inquiry (through testimony, by deposition, or by affidavit) and the rights of witnesses, including the right to have counsel present and the right to cross-examine "any of the witnesses" called. Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.02, 52.04, 1965 Tex. Gen. Laws 317, 559-60; *see Eagle Printing Co.*, 671 S.W.2d at 886. Furthermore, chapter 52 empowered the judge presiding over a court of inquiry to subpoena witnesses, to compel testimony and the production of evidence, and to hold witnesses in contempt. Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.03, 52.05, 52.06, 1965 Tex. Gen. Laws 317, 559-60; *see In re Court of Inquiry*, 148 S.W.3d 554, 555 (Tex. App.—El Paso 2004, no pet.). In light of the potential for misuse of the court-of-inquiry process, the legislature also imposed additional safeguards, including that all evidence and testimony taken during a court of inquiry be transcribed and that the proceedings "be open to the public." Act of May 27, 1965, 59th Leg., R.S., ch. 772, art. 52.07, 1965 Tex. Gen. Laws 317, 559-60. Finally, the legislature empowered a judge

4

presiding over a court of inquiry to issue an arrest warrant if he ultimately concluded that "an offense has been committed." *Id.* art. 52.08.

Recognizing that even the new statutory provisions presented opportunities for abuse, the legislature has repeatedly amended the statutes governing courts of inquiry and has added additional safeguards to mitigate potential problems. *See* Tex. Code Crim. Proc. Ann. arts. 52.01-.09 (West 2006). Significantly, the legislature imposed a multi-step process that must be complied with before a court of inquiry may be held and further limited the individuals who may properly serve over a court of inquiry. *Id.* art. 52.01.

Under the new statutes, if a district court judge who "is acting as a magistrate has probable cause to believe that an offense has been committed," he may request "that the presiding judge of the administrative judicial district appoint a district judge *to commence a Court of Inquiry*." *Id.* art. 52.01(a) (emphasis added); *see also id.* art. 2.10 (West 2005) (stating that it is duty of magistrate to preserve "the peace within his jurisdiction"). In other words, it is only after the presiding judge of the administrative judicial district assigns the case to a district court judge that a court of inquiry is invoked, meaning that the district judge who makes the initial determination regarding probable cause is not conducting a court of inquiry. Moreover, the judge initially involved in the probable-cause-to-believe determination is statutorily prohibited from presiding over a subsequently called court of inquiry. Tex. Code Crim. Proc. Ann. art. 52.01(b)(2).

Although the original version of chapter 52 authorized a judge making the initial probable-cause determination to convene a hearing, summon and examine witnesses, and ultimately employ any of the powers bestowed on judges presiding over courts of inquiry, Act of May 27, 1965,

5

59th Leg., R.S., ch. 772, arts. 52.01-.09, 1965 Tex. Gen. Laws 317, 559-60, the current version of the statute divested those powers from judges making the initial determination. Under the current enactment, a judge making the initial probable-cause determination is only authorized to perform the following two acts: issue an affidavit specifying "the substantial facts establishing probable cause that a specific offense has been committed" and refer the matter to "the presiding judge of the administrative judicial district." Tex. Code Crim. Proc. Ann. art. 52.01(a), (b). It is only after the presiding judge of the district assigns the case to a district judge that the assigned judge is imbued with the various powers and duties listed in the statutory provisions governing courts of inquiry, including the ability to hold hearings, admit evidence, compel testimony, and issue subpoenas and contempt orders. *Id.* arts. 52.01-.07.

The full import of the legislature's decision to distinguish between a district judge who is presiding over a court of inquiry and a district judge involved in the initial probable-cause determination is not entirely clear. The legislature seems to have established a system in which a district judge, while acting as a magistrate, may receive information from the community and then based on the information received, determine whether probable exists to believe that an offense has occurred. What is readily apparent, however, that is the legislature deliberately chose to limit the role and power of judges conducting the initial determination and to reserve the powers identified in chapter 52 of the code of criminal procedure to those judges who have been assigned to preside over a court of inquiry. In other words, although a judge involved in the probable-cause determination may receive information from the public, he may not compel the production of evidence, call witnesses to testify, or conduct a hearing on the matter. In light of the serious

6

problems that have been associated with courts of inquiry and in light of the steps taken by the legislature to ameliorate those concerns, it would be illogical to assume that the legislature intended through its most recent amendment to broaden the power of a judge engaged in the initial probable-cause determination to the unrestrained and unchecked levels that so plagued counts of inquiry held prior to the enactment of chapter 52.

With the preceding in mind, I do not believe that Judge Baird is presiding over a court of inquiry because the presiding judge for the district has not assigned the matter to him. At best, Judge Baird could only be making the initial probable-cause determination. Despite the absence of legislative authorization, Judge Baird has elected to invoke various powers reserved for district judges conducting a court of inquiry. In particular, he convened a hearing to admit and consider evidence and to elicit testimony from witnesses. In light of the legislature's acknowledgment of the potential for abuse through courts of inquiry, its mandate prohibiting a judge who performs the initial probable cause determination from presiding over a subsequent court of inquiry, its decision to exhaustively set out the powers, responsibilities, and limitations for judges presiding over courts of inquiry and remove such empowerment from judges conducting the initial probable-cause determination, I believe that Judge Baird is exercising authority that he does not possess. *See State v. Vasilas*, 187 S.W.3d 486, 489 (Tex. Crim. App. 2006) (stating that when construing statutes, courts must presume that "legislature meant what it said"); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996) (explaining that in interpreting statutes, we presume that "[e]very word in a statute has been used for a purpose"); *see also Ex parte Smith*, 383 S.W.2d at 404 (stating that it

7

is "incumbent upon the justice who convened the court of inquiry to conduct said court in such a manner as to provide the procedural safeguards guaranteed by" constitution).

Given the limited nature of courts of inquiry and given the type of permissible relief that may be afforded through a court of inquiry, I also note that the relief sought by the Relatives is inconsistent with the relief that is available through a court of inquiry. Generally speaking, courts of inquiry are called to determine whether there is probable cause to believe that a crime has occurred. *See, e.g.*, *Ex parte Smith*, 383 S.W.2d at 402 (pertaining to court of inquiry called to investigate whether city official was illegally taking kickbacks); *In re Court of Inquiry*, 148 S.W.3d at 555 (addressing court of inquiry called to see if two police officers assaulted woman); *In re Court of Inquiry*, No. 06-10-00171-CR, 2010 Tex. App. LEXIS 8080, at *1 (Tex. App.—Texarkana 2010, Oct. 6, 2010, orig. proceeding) (regarding court of inquiry held to determine whether prosecutor fraudulently altered indictment); *Texas Dep't of Transp. v. Marquez*, 885 S.W.2d 456, 457 (Tex. App.—El Paso 1994, no pet.) (addressing court of inquiry called to determine whether public servants had illegally funded state programs in discriminatory manner); *cf. In re McClelland*, 260 F. Supp. 182, 183 (S.D. Tex. 1966) (discussing court of inquiry that was held to determine whether there was probable cause to believe that probate court judge had been stealing from estates administered through his court). As mentioned previously, if the presiding judge is convinced at the end of the inquiry that an offense has been committed, he may issue an arrest warrant for the offender. Tex. Code Crim. Proc. Ann. art. 52.08.

Although the Relatives assert in their petition that they are asking for the initiation of a court of inquiry to determine whether various government officials engaged in official

oppression by failing to "adequately consider" the evidence of Willingham's innocence, the main thrust of their assertions is a challenge to Willingham's conviction that occurred in another appellate district and that became final years ago. *Beto*, 397 F.2d at 748 (noting primacy of conducting prosecutions in county or district in which crime was alleged to have occurred in order to aid in fair administration of justice and public's confidence in it); *see also Bitner v. State*, 135 S.W.3d 906, 907 (Tex. App.—Fort Worth 2004, pet. ref'd) (explaining that magistrates may not exercise judicial authority outside geographical limits of his jurisdiction). Moreover, that conviction was affirmed on appeal, *Willingham v. State*, 897 S.W.2d 351 (Tex. Crim. App. 1995), *writ den'd*, 516 U.S. 946 (1995), and Willingham's writ of habeas corpus was denied, *Willingham v. Johnson*, No. 3:98-CV-0409-L, 2001 U.S. Dist. LEXIS 21766 (N.D. Tex. Dec. 31, 2001), *aff'd Willingham v. Cockrell*, 61 Fed. Appx. 918 (5th Cir. Tex. 2003), *writ den'd*, *Willingham v. Dretke*, 540 U.S. 986 (2003). I can see nothing in the provisions of the code of criminal procedure governing courts of inquiry that could be read to authorize an otherwise impermissible collateral attack on a final and presumptively valid conviction.

Even though I believe that Judge Baird is attempting to convene an unauthorized and unorthodox proceeding, I do not believe that the legislature has given us mandamus authority in these circumstances. The government code specifically states that an appeals court "may issue all writs of mandamus . . . against a: (1) judge of a district or county court in the appeals district; or (2) judge of a district court who is acting as a magistrate at a court of inquiry under Chapter 52, Code of Criminal Procedure, in the court of appeals district." Tex. Gov't Code Ann. § 22.221(b) (West 2004). Appellate courts have no authority "to issue a writ of mandamus against an official not

9

prescribed by statute." *In re Hettler*, 110 S.W.3d 152, 154 (Tex. App.—Amarillo 2003, orig. proceeding); *see In re Lopez*, 286 S.W.3d 408, 410 (Tex. App.—Corpus Christi 2008, orig. proceeding) (explaining that appellate court's authority to issue writs of mandamus is limited to those situations described in government code).

In its opinion, the majority concludes that this Court has jurisdiction under subsection 22.221(b)(1) and, thereby, sidesteps the issue of whether a proper court of inquiry has been called. When reaching this decision, the majority lists the relief requested by the Relatives and notes that the Relatives sought a declaration "that Mr. Willingham was wrongfully convicted, and that all legal disabilities attaching to him or his survivors as a result of that conviction are forever removed." The majority then assumes that because the Relatives sought a declaration, the Relatives were pursuing a declaratory judgment cause of action. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008) (containing provisions of Uniform Declaratory Judgments Act). After determining that Judge Baird could only issue that type of declaration while acting in a judicial (not a magisterial) capacity, the majority reasons that we have mandamus jurisdiction because we have jurisdiction over district court judges in our appellate region.

For the reasons that follow, I believe that the majority's conclusion is erroneous. Although the majority correctly points out that the declaratory relief sought is not available through a court of inquiry, *see* Tex. Code Crim. Proc. Ann. arts. 52.01, .08 (West 2006) (limiting remedy available from court of inquiry to issuance of arrest warrant if court determines that "an offense has been committed"), they improvidently jump to the conclusion that the Relatives *must* have been seeking relief under the declaratory judgment act even after admitting that the Relatives do not

10

characterize their petition or the relief they request as falling under the declaratory judgment act and even though the Relatives do not mention the declaratory judgment act, much less cite to any of the statutes or cases governing declaratory judgment actions. In fact, the Relatives repeatedly insist throughout the entirety of their petition that they are seeking relief through a court of inquiry. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (explaining that it is not court's duty to "fashion a legal argument . . . when [party] has failed to do so" and that it is inappropriate for appellate court to "speculate as to what [party] may have intended to raise").

Moreover, the fact that the Relatives requested a declaration as relief does not necessitate a conclusion that they were in fact attempting to seek a declaration under the declaratory judgment act or that they, thereby, invoked Judge Baird's power as a district court judge. Given the language in the Relatives' petition, a more reasonable inference to draw from the fact that the Relatives sought a declaration in their attempt to initiate a court of inquiry is that they simply made a mistake: they included in their prayer a form of relief that is not available through the procedure they attempted to initiate. No higher purpose need be or should be inferred from the Relatives' miscalculation, and courts should be wary of converting the vehicle through which a party chooses to bring forth his claims in order to accommodate the relief that he requests. This seems particularly true given that the Relatives are pursuing a criminal matter and that the declaratory judgment act "is purely a creature of civil law" and "has no application in criminal proceedings." *See Ex parte Williams*, 786 S.W.2d 781, 782 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (stating that declaratory

11

judgment act is "merely a procedural device for deciding cases with a court's jurisdiction rather than a legislative enlargement of a court's power"). Accordingly, the declaratory-judgment assumption that serves as the foundation for the majority's analysis cannot bear the weighty conclusion that the majority ill-advisedly places upon it.

In light of the fact that the Relatives are seeking relief through a court of inquiry and given that I do not believe that the relatives are or could be pursuing a declaratory judgment action in this case, I would conclude that we do not have jurisdiction over Judge Baird under subsection 22.221(b)(1) of the government code because Judge Baird is not being called to act in his judicial capacity.

I also do not believe that we have jurisdiction under subsection 22.221(b)(2). As discussed above, that provision authorizes appellate courts to issue writs against district court judges who are acting as magistrates "at a court of inquiry." Tex. Gov't Code Ann. § 22.221(b)(2). No proper court of inquiry has been called in this case because the matter has not been referred to the presiding judge of the administrative judicial district and because the presiding judge has not assigned a district judge to conduct a court of inquiry. *See* Tex. Code Crim. Proc. Ann. art. 52.01(a), (b). Even assuming for the sake of argument that Judge Baird is attempting (albeit improperly) to ascertain whether there is probable cause to believe that a crime has occurred, appellate courts have no mandamus jurisdiction over judges engaging in that preliminary determination.

This conclusion is supported by two court opinions addressing whether appellate courts have jurisdiction over individuals involved in calling a court of inquiry. When the Amarillo court of appeals was confronted with a similar situation in which it had to determine whether it had

12

jurisdiction over individuals involved in the process of calling a court of inquiry but not actually presiding over the court of inquiry itself, the court concluded that appellate courts do not have mandamus jurisdiction over individuals unless the legislature expressly grants that power. *See In re Hettler*, 110 S.W.3d at 154-55. Specifically, the court decided that it had no jurisdiction to issue a mandamus against the "presiding judge of an administrative judicial region" because the legislature has not bestowed that power upon appellate courts. *Id.* at 154.

The El Paso court of appeals reached a similar result under a prior version of the government code. *See Marquez*, 885 S.W.2d at 459 (Tex. App.—El Paso 1994, no pet.). In that case, the court was charged with determining whether it had jurisdiction over district judges presiding over a court of inquiry. *Id.* At that time, the government code stated that appellate courts may only issue writs against district court judges. *See* Act of April 23, 1987, 70th Leg., R.S., ch. 69, § 1, 1987 Tex. Gen. Laws 174, 174. After determining that judges presiding over courts of inquiry are acting in a magisterial rather than a judicial capacity, the court of appeals concluded that it did not have jurisdiction because section 22.221 did not list judges who are acting as magistrates as individuals over whom appellate courts may issue writs. *Marquez*, 885 S.W.2d at 459. The legislature subsequently amended section 22.221, but it only bestowed on appellate courts mandamus authority over judges actually presiding over a court of inquiry. *See* Tex. Gov't Code Ann. § 22.221(b)(2). Because Judge Baird is not presiding over a court of inquiry, I would conclude that we do not have mandamus authority in this case under subsection 22.221(b)(2). *See id.*

Because the government code does not authorize the issuance of a writ in the circumstances presented to us in this case, *see* Tex. Gov't Code Ann. § 22.221, I believe that we do

not have jurisdiction to consider the writ, *see State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Crim. App. 1996) (explaining that issue of jurisdiction is "fundamental and cannot be ignored" and that courts may address issue sua sponte), *overruled on other grounds*, *Medrano v. State*, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002); *see also Curry v. Wilson*, 853 S.W.2d 40, 45 (Tex. Crim. App. 1993) (explaining that courts derive authority from constitution and state laws); *Drew v. State*, 765 S.W.2d 533, 535-36 (Tex. App.—Austin 1989), *pet. dism'd, improvidently granted*, 805 S.W.2d 451 (Tex. Crim. App. 1991) (per curiam) (stating fundamental proposition that court may only act when it has jurisdiction to do so). Accordingly, I respectfully dissent from the opinion by the majority and would deny the petition for writ of mandamus. *See In re Hettler*, 110 S.W.3d at 155 (dismissing petition for writ of mandamus after concluding that court did not have jurisdiction over official named); *see also In re Ramirez*, No. 03-10-00409-CV, 2010 Tex. App. LEXIS 6678, at *1 (Tex. App.—Austin 2010, orig. proceeding) (denying petition for writ of mandamus because person against whom writ was to issue did not fit into either of categories listed in subsection 22.221(b) of government code).

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Filed:   December 21, 2010

14