**Clem B. McCLELLAND, Appellant,**

v.

**Frank BRISCOE et al., Appellees.**

**No. 14053.**

Court of Civil Appeals of Texas.

Houston.

July 13, 1962.

Rehearing Denied Sept. 13, 1962.

See also 359 S.W.2d 640.

———◆———

J. Edwin Smith, Jack J. Rawitscher,
Houston, Smith & Lehmann, Houston, of
counsel, for appellant.

Sam Robertson, Jr., Carl E. F. Dally, Gus
J. Zgourides, Asst. Dist. Attys., Houston,
for appellees.

BELL, Chief Justice.

This is an appeal from an order refusing
to grant a temporary injunction.

Appellant is the duly elected and qualified
Judge of the Probate Court of Harris Coun-
ty. Appellee Briscoe was and is the Crim-
inal District Attorney of Harris County.
Appellee W. C. Ragan was and is Justice
of the Peace, Precinct No. 1, of Harris
County.

On June 5, 1962, Mr. Briscoe filed a
"Petition for a Court of Inquiry" with ap-
pellee Ragan. In the petition he stated he
petitioned for the inquiry to be held pursu-
ant to Article 886, Code of Criminal Proce-
dure 1925. The inquiry was to be con-
cerning "the processing of various estates
by the Probate Court." In this connection
appellee Briscoe stated he had good cause
to believe that criminal offenses had been
committed against the laws of Texas. He
asked that witnesses be called and examined
in relation thereto.

On the same day appellee Ragan entered
his order reciting he had good cause to be-
lieve that offenses had been committed
against the laws of Texas and he desired to
inquire into matters set forth in the petition
filed. The order set the hearing for June
14, 1962 at 10 a. m.

On June 12, appellant filed his petition
for injunctive relief against appellees, seek-
ing first a temporary injunction and after
trial on the merits a permanent injunction.
The contention of appellant was that Article
886, C.C.P., and Article 887, C.C.P., the lat-
ter article being the one conferring con-
tempt power on the Justice of the Peace
holding the inquiry, were unconstitutional.
It was asserted that appellee Briscoe in-
tended to accuse appellant of offenses
against the laws of Texas of the grade of a
felony. It was asserted that in such cir-
cumstance of use of Article 886, appellant
would be denied the following rights under
Article 1, Section 10 of the Constitution of
Texas:

1. To know the nature and cause of the
accusation against him, and to have a copy
thereof.

2. To have compulsory process for ob-
taining witnesses in his favor.

3. To not answer for a criminal offense unless under indictment of a grand jury.

Appellant further alleged that if it be true that charges were to be filed against him as above alleged, he was entitled not to be deprived of liberty, privileges and immunities except by "due course of the law of the land." Additionally, it was alleged that appellant and numerous other witnesses had been subpoenaed and the above statutes are unconstitutional as in violation of Article 1, Sections 10 and 19, in that the inquiry would involve appellant in criminal prosecutions that would deprive him of certain rights, privileges and immunities.

The above three rights are restated and the following are added:

1. He would be deprived of the rules of procedure to which he would be entitled in a hearing before a Criminal District Court.

2. He would be deprived of the privilege and immunity to have investigation of the alleged offenses on his part investigated in the secrecy of the grand jury.

3. He would be deprived of the right of cross-examination of witnesses against him.

4. He would be deprived of all the privileges to which he is entitled by the due course of the law of the land.

5. He would be subjected to a hearing for which no rules of procedure or of evidence have been prescribed, in violation of his privileges and immunities under the law of the land.

Irreparable loss to appellant is alleged in that there is no adequate remedy to secure to him the above alleged privileges and immunities other than by enjoining of the proceedings. Further, it is alleged that a grand jury is available and has in fact begun investigation. There is a specific prayer that appellees be enjoined from proceeding with the inquiry, and that Articles 886 and 887, C.C.P., be declared unconstitutional. Then there is a general prayer for relief.

The petition is sworn to by appellant.

The substance of the answer is that appellee Ragan would be derelict in performance of the duty imposed on him by Article 886 if he did not proceed since he had good cause to believe criminal offenses had been committed, that the statutes were constitutional and that appellant was neither a defendant nor an accused. There was also a general denial.

A hearing was had at which appellee Ragan testified. He testified that at the inquiry to be held no witness, including appellant, would be allowed representation by counsel. Counsel could be present but would not be allowed to participate in the proceedings. He could not make objections or cross-examine witnesses. The witnesses who desired to do so would not be allowed to cross-examine other witnesses. No one except the District Attorney would be allowed to call witnesses and only the District Attorney or his assistant would be allowed to examine the witnesses. This procedure was to be followed because this was purely an investigation and not a criminal prosecution. The purpose was to find out if any criminal offense had been committed. The inquiry was called because requested by Mr. Briscoe who, in his petition requesting it, swore he had good cause to believe offenses against the law had been committed. Judge Ragan knew nothing other than the representations of Mr. Briscoe. No alleged facts were revealed to him by Mr. Briscoe. The hearing was to be public.

Mr. Briscoe confirmed Judge Ragan's testimony and said he would object to any other attorney participating in the inquiry. He would object to any witnesses being called other than those presented by the District Attorney. He would object to cross-examination of witnesses. He likened the proceedings to a grand jury investigation where a person is entitled to none of the rights asserted by appellant. His view was there was no accused but this was purely an investigatory proceeding. He did not know the details of any offense

committed. He had talked generally to some witness. There was a grand jury in session. He chose the court of inquiry because of the volume of work with other cases that the grand jury had. If this investigation were taken before it a backlog of cases would occur. He could ask for another grand jury to be empaneled. One witness had appeared before the grand jury. The hearing was to be public. By having the court of inquiry, his office could more leisurely pursue the investigation.

The substance of Judge McClelland's testimony was to complain of a public investigatory proceeding where he would be unable to defend himself against testimony that might be given because he could not call witnesses and could not cross-examine any called. He would be willing to meet the District Attorney in a forum where he was accorded these rights. He stated he did not know whether he could be hurt any more than he already was as a result of newspaper publicity that had occurred.

Article 886, C.C.P., provides in substance that if a justice of the peace has good cause to believe that an offense against the laws of the State has been or is about to be committed, he may summon and examine any witness in relation thereto. It further provides that if from the statement of any witness it appears an offense has been committed, the statement of the witness shall be reduced to writing and sworn to and a warrant shall be issued by the justice for the arrest of the offender the same as if a complaint had been made and filed. Article 887 provides the justice of the peace may hold a witness in contempt of court who refuses to appear and testify and may fine the witness not more than $100.00 and attach and imprison the witness until he testifies.

It will be thus seen from a reading of Article 886 that no express provision is made with regard to whether the investigation shall be public or secret, nor is there a provision with regard to whether witnesses shall be entitled to counsel or the right of cross-examination of witnesses who may accuse them of some crime. The appellees have interpreted the statute, since there is no provision prohibiting such, as authorizing a public ex parte proceeding at which witnesses are examined and neither the witnesses nor someone accused by them can be represented by counsel who shall have the right of cross-examination. Nor is one who may be accused in the testimony allowed to call his own witnesses or defend himself. Very candidly, such a procedure as authorized by statute and here employed is to us shocking and is at variance with our conception of the minimum requirements of fair play, within the meaning of due process law. We do not suggest that appellees have in anywise exceeded the authority given by the statute or employed it unfairly. Our expressed views are directed solely to the statute which allows the procedure employed. The reasons for our views are many. Whatever our own views, we find ourselves bound by a decision of the Supreme Court of Texas upholding a comparable statute against every attack here made on Article 886. We are an intermediate court in our judicial system; we are bound by the decisions of a higher court; it is our duty to follow them, and litigants have a right to insist that we do. Any relief from the fundamentally unfair statute must come from the legislature, or from the Supreme Court through a re-examination of its decision.

In the case of Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189, our Supreme Court upheld the constitutional validity of Article 9.02 of the Election Code, V.A.T.S. That statute provided that the District or County Attorneys in case of one county elections could investigate the conduct of such elections and the making, canvassing and reporting of the returns. The statute authorized the calling of the inquiry proceeding by the District Judge. It authorized an ex parte hearing before the District Judge at which the ballots and returns could be inspected and the court could issue process for such witnesses and records relevant to

the conduct of the election as should be requested by the attorney for the state. It provided the proceedings should be conducted in the usual manner as a court of inquiry. The court interpreted this as referring to the inquiry provided for by Article 886, C.C.P. It also gave the court authority to punish a witness for contempt of court for refusal to obey a subpoena or refusal to testify.

Pursuant to this statute the District Attorney initiated the court of inquiry to "inquire into violations of the election laws in Webb County." Jimenez, who was Chief of Detectives of the City of Laredo, was subpoenaed as a witness and refused to testify. He was held in contempt and imprisoned. He sought his release from custody through an application for writ of habeas corpus filed in the Supreme Court. His contention was that the contempt order was void as the statute authorizing the ex parte proceeding was unconstitutional. There were numerous grounds alleged, among which were the same grounds of invalidity asserted in the case before us. The court overruled them all and remanded the relator Jimenez to custody. To quote the court's opinion would serve no useful purpose. It would only lengthen this opinion.

Appellant also attacks the validity of Article 887 which authorizes the justice of the peace who is holding the inquiry to hold a witness in contempt of court for refusing to testify. Appellant relies on the cases of Ex parte Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, and Ex parte Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942.

Appellant has not been held in contempt and we seriously doubt he is in a position to question its validity. However, we do not deem the cited cases as here controlling. Each of those cases involved a contempt found by a judge who was sitting as a one man grand jury under the law of Michigan. In each case the proceeding out of which the contempt grew was held in secret. In the Oliver case the witness was in the secrecy of the proceeding held in contempt

by the judge conducting the proceeding for allegedly falsifying, without any formal contempt charges being filed and without representation by counsel. The Supreme Court of the United States held that due process required that charges be formally preferred, that relator was entitled to counsel and a public trial. However, the court recognized the right of a court in open proceedings to punish for contempt for conduct committed in the immediate presence of the court.

In the Murchison case the court held due process would not permit the judge who acted as a one man grand jury to sit in a contempt proceeding against a witness that grew out of his alleged conduct in falsifying in his testimony given before the judge who was sitting in the secrecy of the grand jury proceeding.

Article 886 contemplates punishment for contempt for conduct occurring in the presence of the court in open court where that conduct involves solely refusal to testify. Since we have no secret inquiry here, we need not notice its validity where it is employed as a result of the witness' behavior in secret.

We should here note the court of inquiry involved in this appeal has not ended but is in recess and is, according to statements made in open court on submission of this appeal, scheduled to resume on August 2, 1962.

The judgment of the trial court is affirmed.

COLEMAN, Justice (concurring opinion).

The statute under consideration provides no rules governing the procedure to be followed in the court of inquiry. Each justice of the peace is free to adopt his own rules, subject only to the constitutionally protected rights of the individual. While courts ordinarily are free to adopt rules of procedure where none are established by law, it would

appear that, at a minimum, some guide lines should be provided for justices of the peace, many of whom are not well grounded in law. The procedure adopted in this case is essentially the same as that customarily used in this State. This procedure provides no protection for the reputations of persons unjustly accused. In this age of mass communication the testimony developed at a court of inquiry is immediately made known to all prospective jurors. It is the purpose of the law that the only testimony produced would be that tending to establish that an offense has been, or is about to be, committed. There is danger that the fairness of a subsequent trial would be adversely affected by such publicity.

I find, however, no constitutional inhibition against such public investigations, even where damage results to the reputations of those against whom no complaint is ever filed. If the testimony of a single witness establishes, in the opinion of the justice of the peace, the commission of an offense, a complaint must be filed. The accused then is afforded an opportunity to rebut these charges. If the testimony merely imputes criminal misconduct, or negligent conduct, not made criminal by statute, no opportunity to clear his reputation is afforded the person accused. Obviously opportunity for abuse of power is presented, particularly in the absence of rules of procedure.

It may reasonably be argued that by reason of the publicity engendered by a court of inquiry, evidence is procured which might not be discovered by a secret investigation. This possible benefit to society in the administration of justice should be weighed against the possible harm resulting to individuals. While we may feel that the law as now written is essentially unfair and is not a wise exercise of the powers of government, the wisdom of the legislative body in enacting the statute can only be judged by a subsequent legislature and the question of the essential fairness of the act within the meaning of the due process clause of the Constitution has been· answered by the Supreme Court of Texas in Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189.

I concur in the opinion delivered by BELL, C. J.