### Ex parte N. A. SMITH.

#### No. 37109.

Court of Criminal Appeals of Texas.

Oct. 28, 1964.

Quinnan H. Hodges, Butler, Binion, Rice & Cook, Houston, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., and Carl E. F. Dally, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

This is an original application for a writ of habeas corpus filed by relator with this Court wherein he seeks his release from custody after being held in contempt by Honorable D. F. Thompson, Justice of the Peace, Precinct No. 2 of Harris County, Texas, for his refusal to testify at a court of inquiry convened by Judge Thompson.

We observe that the District Attorney has, since receipt of this application, joined in the prayer that the relief prayed for be granted and the relator discharged for the reason that he has since been indicted by the Grand Jury and has thereby become an accused in the matter under investigation by the court of inquiry at the time he refused to testify, and being an accused, relator may not now be required to testify before the court of inquiry and thus purge himself of contempt. It is evidently the position of the District Attorney that the matter before us in this cause is now a moot question since relator is now in no position to purge himself of contempt. The writer feels that the question has not become moot, as we shall hereinafter point out, since the fine of $100.00 imposed by Judge Thompson was part of the punishment meted out for contempt and this unfulfilled portion of the contempt order is still unsatisfied. The writer does not agree that relator's question is moot.

Prior to relator being summoned before the Court of Inquiry, some thirteen witnesses had testified, their testimony reflecting that the city of Pasadena had made a contract with its financial advisor, Merrill, Lynch, Pierce, Fenner and Smith which provided for a 2% payment to that firm for its services, that the 2% was grossly in excess of similar services provided for cities of a comparable size of the city of Pasadena; that in connection with the contract, a certain city official, would designate a "local attorney" to be paid one-half of the sum, or 1% of the bond issue, by Merrill, Lynch, Pierce, Fenner and Smith; that relator was one of such designated "local attorneys" and that relator received on at least one occasion a fee of sixty thousand dollars for legal consultation on that bond issue and other fees in connection with other bond issues; that the inference and questions of the district attorney and the answers of the witnesses reflected or attempted to reflect, that relator had not provided services to earn such fee; and that relator had "kicked back" or "paid back" certain of his said fees to certain city officials of the city of Pasadena.

From the above testimony it seems clear that when relator was summoned, while not strictly under arrest, he was in technical custody and was under suspicion and was certainly in the category of a "suspect" in connection with wrongdoing in the municipal affairs of the city of Pasadena.

Further, all the proceedings were conducted in public, in a crowded courtroom and present throughout the proceedings were television cameramen, newspaper reporters and photographers.

When called to testify, relator was informed that he would be denied the right to be represented by counsel; denied the right to cross-examine the witnesses; denied the right to bring witnesses in his own behalf; would not be informed of the cause and nature of the offense being inquired into, and the proceedings were to be conducted as with prior witnesses, i. e., in public. Thereupon, relator refused to testify upon the grounds that his rights, privileges and immunities under the fifth, sixth and fourteenth amendments of the Constitution of the United States and under Art. 1, Sections 10 and 19 of the Constitution of the State of Texas, Vernon's Ann.St., were being violated. Subsequently, relator was held in contempt, fined $100.00, taken into custody, and remanded to jail until his fine was fully paid, and he purged himself of contempt by testifying before the Court of Inquiry.

The Statute authorizing the Court of Inquiry here complained of is Article 886 of Vernon's C.C.P. as follows:

"When a justice of the peace has good cause to believe that an offense has been, or is about to be, committed against the laws of this State, he may summon and examine any witness in relation thereto. If it appears from the statement of any witness that an offense has been committed, the justice shall reduce said statements to writing and cause the same to be sworn to by each witness making the same; and, issue a warrant for the arrest of the offender, the same as if complaint had been made and filed."

We cannot agree with relator's contention that said Article 886 is unconstitutional; however, we do conclude that its use in the instant case is unconstitutional due to the arbitrary and prejudicial abuse of this statute by the state.

In Smith v. State, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84, the U. S. Supreme Court in construing our Texas grand jury statutes held that a statute may be capable of use consistent with "due process" and yet still, by its manner of use and construction, be used in such a manner as to deny "due process".

It is our position that in the instant case relator was not yet a defendant as no charge had actually been preferred against him, but so much suspicion had been cast upon him by the testimony of other witnesses that it was obvious that an indictment would be sought against him, or a charge preferred. In fact, it appears to us that under the facts it was already incumbent upon the justice of the peace to issue a warrant for the arrest of relator under the mandatory provision of Article 886, which states:

"If it appears from the statement of any witness that an offense has been committed, the justice *shall* reduce said statements to writing and cause the same to be sworn to by each witness making the same; and, issue a warrant for the arrest of the offender, *the same as if complaint* had been made and filed."

In Ex Parte Sauls, 46 Tex.Cr.R. 209, 78 S.W. 1073, a similar prosecution, this Court stated:

"Whenever a party is under arrest for a violation of the law, or is held by the authorities investigating a charge against him, the constitutional inhibition against compelling a defendant to testify against himself is operative. * * *"

We further point out that Article 23 of the Vernon's Ann.Texas Penal Code defines an "accused" as " * * * any person who, in a legal manner, is held to answer for an offense, at any stage of the proceeding, or against whom complaint in a lawful manner is made charging an offense, including all proceedings from the order for arrest to the final execution of the law." The use of the words "or against whom complaint in a lawful manner is

made" in the foregoing statute makes it apparent that it is not essential that a complaint be filed or a warrant for arrest to issue for a person to be an accused.

While we do not find Art. 886 unconstitutional, we do feel the procedure used in conducting the inquiry was unconstitutional. As stated in 24 Am.Jur. 865, Sec. 47: .

"* * * The protection of the grand jury would amount to nothing if the citizen were first exposed to scandal and disgrace by a public examination of the state in order to see whether he ought to be tried in public on a criminal charge, without any right on his part to examine the state's witnesses, to offer to contradict them to prove their bad character, or to be represented by counsel. * * *"

Thus, concluding that relator has been placed in the position of an "accused" or "suspect", it is incumbent upon the justice who convened the court of inquiry to conduct said court in such a manner as to provide the procedural safeguards guaranteed an accused under Article 1, Sec. 10 of our State Constitution and the fifth and fourteenth amendments to the United States Constitution.

The State contends the procedures are justified and relies upon McClelland v. Briscoe, Tex.Civ.App., 359 S.W.2d 635, r. e. f., n. r. e. and Ex Parte Jimenez, 159 Tex. 183, 317 S.W.2d 189.

In McClelland, a civil case construing Article 886, reliance was had upon Ex Parte Jimenez. From a reading of the Jimenez case, it is apparent that it is not applicable to the case at bar and distinguishable as follows:

First, it is a civil case construing Article 9.02 of the Election Code, V.A.T.S. The act in that case in no sense constituted the commencement of a criminal prosecution as do Articles 886 and 887 in the instant case and the parties involved could not be considered as "accused" persons or as an "accused".

Secondly, in Jimenez, no denial of due process was pointed out to the Court. In the case at bar, a denial of due process is involved.

Finally, the court in Jimenez was considering whether Article 9.02 of our civil statutes was free from a defect in its caption, contained a conflicting penalty provision, or violated free speech and did not approve the mode of procedure practiced in the case at bar.

Thus it follows that McClelland v. Briscoe, supra, which relies upon Jimenez is also no authority for the State's position. In the McClelland opinion, which was an action seeking to enjoin further the proceedings under a court of inquiry, Chief Justice Bell evidenced his opinion of the procedure complained of in the instant case as follows:

"Very candidly, such a procedure as authorized by statute and here employed is to us shocking and is at variance with our conception of the minimum requirements of fair play, within the meaning of due process law."

We readily concur in his statement.

We hold that the relator was denied his constitutional rights.

Accordingly, the relator is ordered discharged.

MORRISON, Judge (concurring).

I concur in the order discharging relator because the State now makes it known that he has been indicted and may not purge himself of contempt.

WOODLEY, Presiding Judge (concurring).

The judges of this Court have been unable to agree upon an opinion but are in agreement that the petition for writ

of habeas corpus should be granted and the relator discharged.

 The writer agrees that Art. 886, Vernon's Ann.C.C.P. is constitutional, as held by the Supreme Court and the Court of Civil Appeals, in McClelland v. Briscoe and Ex parte Jimenez, cited by Judge McDonald. He also agrees with Judge McDonald's view that the matter before us is not moot, and the relator cannot be ordered discharged upon that ground.

The writer would grant the petition for writ of habeas corpus and order the petitioner discharged for the following reasons only

The proceedings before the Justice of the Peace being authorized by a valid statute, the controlling question is whether the relator was "an accused" who could not be called as a witness and required to testify, or was a witness who was bound to testify though he could plead his right against self-incrimination to any and all specific questions, the answer to which might tend to incriminate him. See McCormick on Evidence, Section 122.

If the relator occupied the status of "an accused" when called to testify at the Court of Inquiry, he was not required to testify and was not in contempt for refusing to do so. This is so without regard to whether or not he was denied the full assistance of counsel and whether or not the proceedings were conducted in an otherwise arbitrary and prejudicial manner.

The privilege of a witness to refuse to incriminate himself guaranteed by the 5th and 14th Amendments of the U.S. Constitution furnished no excuse for his refusal to take the witness stand and testify. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

The relator did not plead his privilege against self-incrimination to any question. He refused to testify or make any statement of facts.

Relator has since been indicted and the District Attorney concedes that he is an accused in the matter that was under investigation and cannot now be required to testify at the Court of Inquiry. He acted upon the advice of counsel and there is no reason to suppose that, had the relator purged himself, the contempt order, including the fine, would not have been set aside.

As to the fine imposed the contempt order is criminal in nature. The State alone is interested in enforcement in such cases. Beverly v. Roberts (Tex.Civ.App.) 215 S.W. 975; Ex parte Wolters, 64 Tex.Cr.R. 238, 144 S.W. 531. The District Attorney representing the State has joined in the prayer that the relator be discharged.