**In re R. Lowell THOMPSON.**

No. 03–10–00689–CV.

Court of Appeals of Texas, Austin.

Dec. 21, 2010.

Rehearing Overruled Jan. 28, 2011.

8. *See Guetersloh v. C.I.T. Corp.*, 451 S.W.2d 759, 760 (Tex.Civ.App.-Amarillo 1970, writ ref'd n.r.e.).

9. *Id.*

R. Lowell Thompson, Criminal District Attorney, Navarro County, Corsicana, TX, Pro Se for Relator.

Alan R. Glickman, Christopher H. Giampapa, Yocheved Cohen, Daniel L. Greenberg, Schulte, Roth & Zabel, LLP, Barry Scheck, The Innocence Project, Inc., New York, NY, Gerald Harris Goldstein, Goldstein, Goldstein and Hilley, San Antonio, TX, for Real Party in Interest.

Before Chief Justice JONES, Justices PURYEAR and PEMBERTON.

### *OPINION*

J. WOODFIN JONES, Chief Justice.

Relator R. Lowell Thompson, acting in his official capacity as the district attorney of Navarro County, Texas, filed a motion to recuse Respondent, the Honorable Charlie Baird, Judge of the 299th District Court of Travis County, Texas, in a proceeding styled *In re: Cameron Todd Willingham* and given Cause No. D–1–DC–10–100069. Judge Baird declined to rule on the motion, concluding that Thompson lacked standing to file a motion to recuse because he was not a party to the proceeding. In this original proceeding before this Court, Thompson seeks a writ of mandamus to compel Judge Baird to follow the recusal procedure outlined in Texas Rule of Civil Procedure 18a by either recusing himself or referring the motion to the presiding judge of the administrative judicial district. We will conditionally grant the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Real Parties in Interest Eugenia Willingham and Patricia Willingham Cox ("the Relatives") are some of the surviving relatives of Cameron Todd Willingham, a Navarro County man convicted of murder in 1992 and executed by the State in 2004. Asserting that Willingham was innocent of the crime for which he was convicted and that "officials of the State committed the offense of official oppression" by, among other things, "endeavoring to prevent the truth from emerging following [Willingham's] execution," the Relatives filed a petition requesting that the trial court

> convene a Court of Inquiry, pursuant to Texas Code of Criminal Procedure Article 52.01(a), to investigate whether offenses against the laws of Texas have been committed, and issue a declaration that Mr. Willingham was wrongfully convicted and that otherwise repairs the injury done to his reputation, as provided by Article 1, Section 13 of the Texas Constitution and Section 71.021(a) of the Texas Civil Practice and Remedies Code.

*See generally* Tex.Code Crim. Proc. Ann. art. 52.01–.09 (West 2006) (describing Court–of–Inquiry procedure).

Thompson, the current district attorney of the county that prosecuted Willingham, filed a motion to recuse Judge Baird, asserting that he was biased. In response, the Relatives argued that Thompson lacked standing to bring a recusal motion because the Court-of-Inquiry proceeding that their petition invoked was "*ex parte*,"[1] and, consequently, that Thompson was not a "party" as required by Rule 18a. *See* Tex.R. Civ. P. 18a(a) ("[A]ny *party* may file ... a motion stating grounds why the judge ... should not sit." (Emphasis added.)). After considering arguments from Thompson and the Relatives, Judge Baird concluded that Thompson was not a party and thus lacked standing to file a motion to recuse. In light of that conclusion, Judge Baird declined to rule on the merits of the motion and immediately proceeded to commence an evidentiary hearing. The exact nature of that evidentiary hearing is not clear, but the Relatives describe it to this Court as a pre-Court-of-Inquiry proceeding being conducted for the purpose of gathering facts to determine whether Judge Baird would issue an affidavit requesting the commencement of a Court of Inquiry.[2] *See* Tex.Code Crim. Proc. Ann. art. 52.01(a) (requiring judge to make affidavit evidencing probable cause that "an offense has been committed" before requesting that presiding judge of administrative judicial district appoint different district judge to commence Court of Inquiry). Thompson filed a petition for writ of mandamus and emergency motion for stay in this Court seeking to compel Judge Baird to rule on the recusal motion and otherwise comply with the requirements of Rule 18a. *See* Tex.R. Civ. P. 18a (requiring that, on filing of motion to re-

cuse, judge must take no further action in case and either (1) recuse himself, or (2) forward motion to presiding judge of administrative judicial district for hearing). We temporarily stayed the proceedings below pending our decision here.

## DISCUSSION

### *Mandamus Jurisdiction*

As a threshold issue, the Relatives argue that we lack jurisdiction to issue a writ of mandamus because, they assert, Judge Baird "is not acting in his capacity as a judge of a district court, but rather in his capacity as a magistrate." Section 22.221 of the government code defines and limits our mandamus jurisdiction. It provides, in pertinent part:

(b) Each court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a:

(1) judge of a district or county court in the court of appeals district; or

(2) judge of a district court who is acting as a magistrate at a court of inquiry under Chapter 52, Code of Criminal Procedure, in the court of appeals district.

Tex. Gov't Code Ann. § 22.221(b) (West 2004). The Relatives argue that

although section 22.221(b)(2) authorizes the Court to exercise mandamus jurisdiction against a judge acting as a magistrate, that mandamus jurisdiction is explicitly limited to a judge acting as a magistrate "at a court of inquiry." Here, no court of inquiry has been convened....

---

1. *Ex parte* is defined as: "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested." Black's Law Dictionary 657 (9th ed.2009).

2. In light of our analysis below, we need not decide whether such a procedure would be proper under Texas law.

The Relatives argue that article 52.01(a) of the code of criminal procedure contemplates a two-step procedure in Court–of–Inquiry proceedings. *See* Tex.Code Crim. Proc. Ann. art. 52.01. They assert that the proceedings below were merely part of the first step, in which Judge Baird was acting as a magistrate in a proceeding that was not itself a "Court of Inquiry" as that term is defined by the code of criminal procedure and used in subsection 22.221(b)(2) of the government code. Accordingly, they contend that section 22.221(b) of the government code does not authorize this Court to issue a writ of mandamus in the present circumstances because Judge Baird was neither acting in his capacity as a district judge nor acting as a magistrate *at a* Court of Inquiry.

■ We need not decide whether the Relatives are correct in asserting that the proceedings below, as they depict them, are not a "Court of Inquiry," because the record establishes our mandamus authority over the case pursuant to subsection 22.221(b)(1), without regard to subsection (b)(2). The Relatives' original petition, labeled "Petition to Convene a Court of Inquiry and for a Declaration to Remedy Injury to Mr. Willingham's Reputation Under the Texas Constitution," asked for the following specific relief:

   A.  Find, pursuant to Texas Code of Criminal Procedure Article 52.01(a), that there is probable cause to believe that offenses against the laws of Texas have been committed;

   B.  Enter into the minutes of the Court, pursuant to Article 52.01(b)(1), a sworn affidavit stating the substantial facts establishing probable cause that one or more offenses against the laws of Texas were committed;

   C.  File, pursuant to Article 52.01(b)(2), a copy of the affidavit with the District Clerk;

   D.  Declare that Mr. Willingham was wrongfully convicted, and that all legal disabilities attaching to him or his survivors as a result of that conviction are forever removed;

   E.  Request, pursuant to Article 52.01(b)(2), the Presiding Judge of the Administrative Judicial District to appoint a judge to commence a Court of Inquiry to investigate these matters further. . . .

■ Thus, the petition sought two different forms of relief. Under subparagraphs A, B, C, and E, the Relatives sought to initiate the process set forth in article 52.01. In subparagraph D, however, the Relatives sought a declaration that "Mr. Willingham was wrongfully convicted." This second type of request is in the nature of a declaratory-judgment claim, which is necessarily addressed to the court in its judicial, rather than magisterial, capacity. In other words, the claim sought relief that Judge Baird could only have granted while acting in his capacity as a district judge, not while acting in his capacity as a magistrate. Thompson's motion to recuse sought to have Judge Baird recuse himself from the entire case, which necessarily included the request for declaratory relief. Accordingly, the Relatives' prayer for declaratory relief brings this case within our mandamus jurisdiction over a judge of a district court in our appellate district. *See* Tex. Gov't Code Ann. § 22.221(b)(1); *see also* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008) (declaratory-judgment statute). We disagree with the Relatives' attempt to characterize their request for declaratory relief as part of or incident to a Court–of–Inquiry proceeding, because such relief is not available from a Court of

Inquiry. *See* Tex.Code Crim. Proc. Ann. arts. 52.01, .08 (sole end of Court of Inquiry is to determine whether "an offense has been committed" and, if so, to "issue a warrant for the arrest of the offender as if complaint had been made and filed"). Accordingly, we conclude that we have jurisdiction to issue a writ of mandamus in the present case under subsection 22.221(b)(1) of the government code. We now turn to the question of whether mandamus relief is warranted under the present circumstances.

### Thompson's Party Status Under Rule 18a

■ The Relatives argue that Thompson is not a party to the case below and thus does not have "standing" under Rule 18a to file a motion to recuse. Rule 18a states in pertinent part:

> At least ten days before the date set for trial or other hearing in any court other than the Supreme Court, the Court of Criminal Appeals or the court of appeals, *any party may file* with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case.

Tex.R. Civ. P. 18a(a) (emphasis added). Thompson argues that he is, or should be deemed, a party because Judge Baird invited him to participate in the proceedings and because the State has a justiciable interest in the case sufficient to establish standing. The Relatives respond that Thompson "is not a party to the proceeding before [Judge Baird], which is an *ex parte,* non-adversarial, preliminary hearing to determine whether there is probable cause to convene a court-of-inquiry."

■ As discussed above, we find the Relatives' *"ex-parte"* argument unconvincing in light of their request for declaratory relief from the trial court. Any authority the trial court would have to grant declaratory relief would stem from the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011, which does not contemplate *ex parte* proceedings. To the contrary, the Act requires that all interested persons must be made parties and states that a declaration does not prejudice the rights of a non-party:

> When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

Tex. Civ. Prac. & Rem.Code Ann. § 37.006.

The State of Texas prosecuted Willingham and obtained a judgment of conviction against him. The Relatives seek a judicial declaration that would be inconsistent with that judgment. It goes without saying that the State has an "interest that would be affected" by such a declaration. Thompson, the district attorney of the county that prosecuted Willingham on behalf of the State, is a logical person to represent the State's interest in that inquiry. Accordingly, we hold that Thompson, on behalf of the State, has met the "party" requirement of Rule 18a.

### Is Mandamus Relief Available?

■ The Relatives argue that mandamus relief is not available here because Thompson has an adequate remedy by appeal. Mandamus is available when there is (1) a clear abuse of discretion by the trial court, and (2) no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004).

■ A trial court abuses its discretion when it reaches a decision so arbitrary or unreasonable as to amount to a clear and prejudicial error of law. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789,

800 (Tex.2002). When it comes to deciding what law applies—even if that law is unsettled—or in applying that law to the facts of the case, the trial court has no discretion. *In re Prudential,* 148 S.W.3d at 135.

■■■ "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *Id.* Thus, the word "adequate" is really a proxy for the careful balancing test appellate courts apply in determining whether the benefits outweigh the detriments. *Id.* This test considers "both public and private interests." *Id.* In general, we avoid mandamus review of "incidental, interlocutory rulings" because such review is often unproductive, expensive, and distracts courts from important issues in the disposition of the case and the uniform development of the law. *Id.* But we employ mandamus review of important or novel situations in exceptional cases because such review may preserve a party's substantial rights from impairment, allow the appellate court to give "needed and helpful direction to the law that would otherwise prove elusive in appeals from finals judgments," and reduce the waste of time and money resulting from the eventual reversal of improperly conducted proceedings. *Id.* We remain mindful that our contemplation of whether there is an adequate remedy on appeal "is not an abstract or formulaic one; it is practical and prudential." *Id.*

### (i) Abuse of Discretion

■■■ Rule 18a imposes certain mandatory requirements on a judge once a motion to recuse is filed:

(c) Prior to any further proceedings in the case, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion. If the judge recuses himself, he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit, and shall make no further orders and shall take no further action in the case except for good cause stated in the order in which such action is taken.

(d) If the judge declines to recuse himself, he shall forward to the presiding judge of the administrative judicial district, in either original form or certified copy, an order of referral, the motion, and all opposing and concurring statements. Except for good cause stated in the order in which further action is taken, the judge shall make no further orders and shall take no further action in the case after filing of the motion and prior to a hearing on the motion. The presiding judge of the administrative judicial district shall immediately set a hearing before himself or some other judge designated by him, shall cause notice of such hearing to be given to all parties or their counsel, and shall make such other orders including orders on interim or ancillary relief in the pending cause as justice may require.

Tex.R. Civ. P. 18a; *see also* Tex. Gov't Code Ann. § 74.059(c)(3) (West 2005) (judge must "request the presiding judge to assign another judge to hear a motion relating to the recusal of the judge from a case pending in his court").

■■■ Other courts of appeals have concluded that Rule 18a's recusal-or-referral requirement is mandatory and that mandamus relief is appropriate to compel compliance with the rule. *See, e.g., In re Kiefer,* No. 05–10–00452–CV, 2010 WL 2220588, at *1–2 (Tex.App.-Dallas June 4, 2010, orig.

proceeding) (mem.op.) (recusal or referral "mandatory"); *In re Norman*, 191 S.W.3d 858, 860 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding) (Rule 18a states that judge has "mandatory duty either to recuse himself or refer the motion to the presiding judge"); *In re Healthmark Partners, L.L.C.*, No. 14–04–00743–CV, 2004 WL 1899953, at *1 (Tex.App.-Houston [14th Dist.] Aug. 26, 2004, orig. proceeding) (mem.op.) (same); *In re Rio Grande Valley Gas Co.*, 987 S.W.2d 167, 179–80 (Tex.App.-Corpus Christi 1999, orig. proceeding) (same); *see also Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim.App.1993) (rule 18a applies in criminal cases); *see also Ex parte Sinegar*, 324 S.W.3d 578, 580–82 (Tex.Crim.App.2010) (rule 18a also applies in habeas proceedings). Likewise, construing a substantially similar statutory predecessor to Rule 18a, the Texas Supreme Court has held that (1) a judge has "the mandatory duty" to recuse himself or refer the matter to the presiding judge to hear a properly filed motion to recuse, and (2) mandamus relief is proper to compel compliance. *See McLeod v. Harris*, 582 S.W.2d 772, 775 (Tex.1979). We agree that the provisions of Rule 18a are mandatory; they cannot be reasonably read otherwise. Consequently, Judge Baird abused his discretion by failing to either recuse himself or refer the motion to the presiding judge of the administrative judicial district. *See In re Prudential*, 148 S.W.3d at 135 (judge has no discretion in applying facts to law).

### (ii) Adequate Remedy by Appeal

■ Having concluded that Judge Baird abused his discretion, we must determine if Thompson has an adequate remedy by appeal. The "[d]enial of a motion to recuse is appealable upon final judgment. Thus, a relator challenging the denial of a recusal motion ordinarily has an adequate remedy by appeal of the denial of a motion to recuse." *In re Norman*, 191 S.W.3d at 860; *see also* Tex.R. Civ. P. 18a(f) (providing that denial of motion is appealable from final judgment). Here, however, the trial judge has not denied the motion to recuse, but has refused to rule on it. As noted above, in such circumstances, courts have concluded that no adequate remedy by appeal exists and have granted mandamus relief. *See McLeod*, 582 S.W.2d at 775; *In re Norman*, 191 S.W.3d at 860 ("[The trial judge] had a mandatory duty either to recuse himself or refer the motion to the presiding judge.... We conditionally grant the petition for writ of mandamus."); *In re Healthmark Partners, L.L.C.*, 2004 WL 1899953, at *2 ("In the circumstances of this case, [the trial judge] had only two options, recusal or referral. Because she took neither, we grant ... the petition for writ of mandamus.").

We agree that, under the circumstances presented here, Thompson has no adequate remedy by appeal. First, this is a novel and important case with wide public interest, which provides an opportunity for this Court to give "needed and helpful direction to the law that would otherwise prove elusive." *In re Prudential*, 148 S.W.3d at 136. Second, the parties' right to an impartial judge is at risk by the judge's failure to consider and rule on the motion to recuse. *Id.* Although we acknowledge that the rule's provision for appeal after the *denial* of a motion to recuse may provide an adequate remedy in that situation, that remedy is inadequate, where, as here, a judge *refuses* to rule. Allowing a judge accused of bias to improperly decline to refer the matter to a neutral judge and to conduct potentially biased proceedings injects an unacceptable risk of actual bias and—importantly for interests of the judicial system at large—the potential appearance of bias. *See Aet-*

*na Life Ins. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) ("[T]o perform its high function in the best way, justice must satisfy the appearance of justice." (Internal quotation marks omitted.)). Waiting until final judgment to appeal the judge's failure to rule on a recusal motion—if such an appeal is even available—would not be an adequate remedy because it could not sufficiently correct the perception of bias engendered by the judge's failure to allow the merits of the recusal motion to be timely addressed by a neutral judge. Third, granting mandamus relief here will not cause appreciable delay or cost to the parties or the judicial system, while mitigating the risk of harm caused by the appearance of bias. *See In re Prudential,* 148 S.W.3d at 136.

### *The Relatives' Arguments Regarding the Merits of the Motion to Recuse*

▪ Finally, the Relatives assert that the grounds of Thompson's motion to recuse lack merit. Thus, they invite us to consider the merits of the motion and, based on that review, refrain from exercising our discretionary mandamus authority. Reviewing the merits of the motion to recuse, however, is beyond the limited scope of our inquiry here. *See In re Healthmark Partners, L.L.C.,* 2004 WL 1899953, at *2 n. 3. Moreover, contrary to the Relatives' arguments, failure to review the merits will not cause unremediable delay or hardship to the Relatives should the merits prove groundless, because Rule 18a(h) allows the judge assigned to hear the recusal motion to issue sanctions if he concludes that the motion was brought for delay and without sufficient cause. *See* Tex.R. Civ. P. 18a(h).

### CONCLUSION

We hold that, upon the filing of Thompson's motion to recuse, Judge Baird was required to either recuse himself or refer the motion to the presiding judge of the administrative judicial district and that he abused his discretion by failing to do so. Concluding that mandamus relief is authorized and warranted, we conditionally grant Thompson's petition. The writ will issue only if the trial court fails to comply with this opinion. The stay of proceedings issued by this Court on October 14, 2010 will remain in effect until Judge Baird complies with this opinion.

Dissenting Opinion by Justice PURYEAR.

DAVID PURYEAR, Justice, dissenting.

In this case, the Relatives of Cameron Todd Willingham have sought to invoke a court of inquiry regarding Willingham's conviction in Navarro County and his ultimate execution. In furtherance of that goal, the Relatives filed with Judge Baird a petition to convene a court of inquiry in Travis County. After the petition was filed, Judge Baird scheduled a hearing and sent letters to various individuals, including some government officials, informing them of the hearing and inviting them to attend and to present evidence regarding the matter. Shortly thereafter, Lowell Thompson, who is the district attorney from the county in which Willingham was convicted, filed a motion to recuse Judge Baird from the matter. When Judge Baird concluded that the district attorney did not have standing to seek his recusal, the district attorney filed this writ of mandamus asking this Court to order Judge Baird to either recuse himself or refer the recusal matter to the presiding judge of the administrative judicial district. *See* Tex.R. Civ. P. 18a(c). After reviewing the district attorney's petition and the response by the Relatives, the majority in this case determines that they have jurisdiction to issue a writ in this case and also orders Judge Baird to either recuse him-

self or refer the matter in accordance with the rules of civil procedure. For the reasons that follow, I respectfully dissent from the opinion by the majority and would instead deny the petition for the writ of mandamus because I believe that this Court does not have jurisdiction in this case.

Before addressing the petition, I believe that a brief discussion regarding the evolution of courts of inquiry would be helpful. Courts of inquiry have a long and troubled history in Texas jurisprudence. *See Eagle Printing Co. v. Delaney,* 671 S.W.2d 883 (Tex.Crim.App.1984). A court of inquiry is a procedural device employed "to ascertain if illegal activity has occurred or is occurring." *Jones v. Westergren,* 771 S.W.2d 669, 673 (Tex.App.-Corpus Christi 1989, no writ). At the risk of understating the matter, courts of inquiry are "extraordinary proceeding[s]." *See id.* at 883. In the past, the procedures routinely used during courts of inquiry were fundamentally unfair and abusive in nature. *Id.* at 886 (noting that procedures utilized were shocking in nature); *see also Martin v. State,* 382 U.S. 928, 929, 86 S.Ct. 307, 15 L.Ed.2d 340 (1965) (noting that there are "grave constitutional questions" raised by conducting courts of inquiry); *Martin v. Beto,* 397 F.2d 741, 749 (5th Cir.1968) (Thornberry, J., concurring) (reflecting that procedures used in courts of inquiry present serious constitutional concerns). Some of the questionable procedures employed included denying an accused of the right to counsel, refusing to inform the accused of the nature of the accusation against him, and prohibiting an accused from presenting a defense, calling his own witnesses, or cross-examining the witnesses that were called. *See Ex parte Smith,* 383 S.W.2d 401, 403–04 (Tex.Crim. App.1964) (concluding that procedures employed during court of inquiry were unconstitutional); *McClelland v. Briscoe,* 359

S.W.2d 635, 638 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.) (stating that procedures used were "shocking and ... at variance with our conception of the minimum requirements of fair play, within the meaning of due process law"); *see also Westergren,* 771 S.W.2d at 671 (addressing mandamus in which relator asserted that judge who called court of inquiry was "interested in the outcome of the proceeding" and was accuser in proceeding but was not subject to cross-examination). Furthermore, "the absence of rules of procedure" for courts of inquiry presented an "opportunity for abuse of power," and courts of inquiry provided little protection for those "unjustly accused." *Briscoe,* 359 S.W.2d at 640 (Coleman, J., concurring); *Neal v. Brim,* 506 F.2d 6, 7 n. 1 (5th Cir.1975) (explaining that when court of inquiry is called, rules of evidence and other procedural safeguards are suspended). The unfettered discretion employed during these proceedings was further compounded by the publicity and media attention that these proceedings engendered. *See, e.g., Beto,* 397 F.2d at 751 (Thornberry, J., concurring) (calling court of inquiry "carnival proceeding" and noting that type of publicity received seemed "at variance with elemental requirements of fair play"). In light of these inequities, members of the judiciary called for legislative reform, and a committee of the State Bar asked for the abolishment of courts of inquiry in their entirety. *Eagle Printing Co.,* 671 S.W.2d at 886.

In response to these concerns, the legislature enacted chapter 52 of the code of criminal procedure and expressly set out the manner in which courts of inquiry may be invoked, the limited and narrow function of courts of inquiry, and the rights and responsibilities of those involved in calling, presiding over, and attending a court of inquiry. *See* Act of May 27, 1965,

59th Leg., R.S., ch. 772, arts. 52.01–.09, 1965 Tex. Gen. Laws 317, 559–60. Notably, the legislature limited the officials who may convene a court of inquiry to district judges. *See id.* art. 52.01; *see also Eagle Printing Co.,* 671 S.W.2d at 886 (explaining that legislature concluded that courts of inquiry could still serve useful purpose if presiding officers were limited to district court judges and if procedural aspects were explicitly "spelled out").

As originally enacted, chapter 52 allowed a district judge who "has good cause to believe that an offense has been committed" to convene a court of inquiry and to "summon and examine any witness in relation thereto." *See* Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.01–.09, 1965 Tex. Gen. Laws 317, 559–60; *see also Neal,* 506 F.2d at 7 (pertaining to court of inquiry called by judge who had cause to believe that crime had occurred); *Westergren,* 771 S.W.2d at 670 (same). In addition, the original version of chapter 52 also exhaustively set out the manner in which evidence may be taken at a court of inquiry (through testimony, by deposition, or by affidavit) and the rights of witnesses, including the right to have counsel present and the right to cross-examine "any of the witnesses" called. Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.02, 52.04, 1965 Tex. Gen. Laws 317, 559–60; *see Eagle Printing Co.,* 671 S.W.2d at 886. Furthermore, chapter 52 empowered the judge presiding over a court of inquiry to subpoena witnesses, to compel testimony and the production of evidence, and to hold witnesses in contempt. Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.03, 52.05, 52.06, 1965 Tex. Gen. Laws 317, 559–60; *see In re Court of Inquiry,* 148 S.W.3d 554, 555 (Tex.App.-El Paso 2004, no pet.). In light of the potential for misuse of the court-of-inquiry process, the legislature also imposed additional safeguards, including that all evidence and testimony taken during a court of inquiry be transcribed and that the proceedings "be open to the public." Act of May 27, 1965, 59th Leg., R.S., ch. 772, art. 52.07, 1965 Tex. Gen. Laws 317, 559–60. Finally, the legislature empowered a judge presiding over a court of inquiry to issue an arrest warrant if he ultimately concluded that "an offense has been committed." *Id.* art. 52.08.

Recognizing that even the new statutory provisions presented opportunities for abuse, the legislature has repeatedly amended the statutes governing courts of inquiry and has added additional safeguards to mitigate potential problems. *See* Tex.Code Crim. Proc. Ann. arts. 52.01–.09 (West 2006). Significantly, the legislature imposed a multi-step process that must be complied with before a court of inquiry may be held and further limited the individuals who may properly serve over a court of inquiry. *Id.* art. 52.01.

Under the new statutes, if a district court judge who "is acting as a magistrate has probable cause to believe that an offense has been committed," he may request "that the presiding judge of the administrative judicial district appoint a district judge *to commence a Court of Inquiry.*" *Id.* art. 52.01(a) (emphasis added); *see also id.* art. 2.10 (West 2005) (stating that it is duty of magistrate to preserve "the peace within his jurisdiction"). In other words, it is only after the presiding judge of the administrative judicial district assigns the case to a district court judge that a court of inquiry is invoked, meaning that the district judge who makes the initial determination regarding probable cause is not conducting a court of inquiry. Moreover, the judge initially involved in the probable-cause-to-believe determination is statutorily prohibited from presiding over a subsequently called court of inquiry. Tex.Code Crim. Proc. Ann. art. 52.01(b)(2).

Although the original version of chapter 52 authorized a judge making the initial probable-cause determination to convene a hearing, summon and examine witnesses, and ultimately employ any of the powers bestowed on judges presiding over courts of inquiry, Act of May 27, 1965, 59th Leg., R.S., ch. 772, arts. 52.01–.09, 1965 Tex. Gen. Laws 317, 559–60, the current version of the statute divested those powers from judges making the initial determination. Under the current enactment, a judge making the initial probable-cause determination is only authorized to perform the following two acts: issue an affidavit specifying "the substantial facts establishing probable cause that a specific offense has been committed" and refer the matter to "the presiding judge of the administrative judicial district." Tex.Code Crim. Proc. Ann. art. 52.01(a), (b). It is only after the presiding judge of the district assigns the case to a district judge that the assigned judge is imbued with the various powers and duties listed in the statutory provisions governing courts of inquiry, including the ability to hold hearings, admit evidence, compel testimony, and issue subpoenas and contempt orders. *Id.* arts. 52.01–.07.

The full import of the legislature's decision to distinguish between a district judge who is presiding over a court of inquiry and a district judge involved in the initial probable-cause determination is not entirely clear. The legislature seems to have established a system in which a district judge, while acting as a magistrate, may receive information from the community and then based on the information received, determine whether probable exists to believe that an offense has occurred. What is readily apparent, however, that is the legislature deliberately chose to limit the role and power of judges conducting the initial determination and to reserve the powers identified in chapter 52 of the code of criminal procedure to those judges who have been assigned to preside over a court of inquiry. In other words, although a judge involved in the probable-cause determination may receive information from the public, he may not compel the production of evidence, call witnesses to testify, or conduct a hearing on the matter. In light of the serious problems that have been associated with courts of inquiry and in light of the steps taken by the legislature to ameliorate those concerns, it would be illogical to assume that the legislature intended through its most recent amendment to broaden the power of a judge engaged in the initial probable-cause determination to the unrestrained and unchecked levels that so plagued counts of inquiry held prior to the enactment of chapter 52.

With the preceding in mind, I do not believe that Judge Baird is presiding over a court of inquiry because the presiding judge for the district has not assigned the matter to him. At best, Judge Baird could only be making the initial probable-cause determination. Despite the absence of legislative authorization, Judge Baird has elected to invoke various powers reserved for district judges conducting a court of inquiry. In particular, he convened a hearing to admit and consider evidence and to elicit testimony from witnesses. In light of the legislature's acknowledgment of the potential for abuse through courts of inquiry, its mandate prohibiting a judge who performs the initial probable cause determination from presiding over a subsequent court of inquiry, its decision to exhaustively set out the powers, responsibilities, and limitations for judges presiding over courts of inquiry and remove such empowerment from judges conducting the initial probable-cause determination, I believe that Judge Baird is exercising authority that he does not possess. *See*

*State v. Vasilas,* 187 S.W.3d 486, 489 (Tex. Crim.App.2006) (stating that when construing statutes, courts must presume that "legislature meant what it said"); *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim. App.1996) (explaining that in interpreting statutes, we presume that "[e]very word in a statute has been used for a purpose"); *see also Ex parte Smith,* 383 S.W.2d at 404 (stating that it is "incumbent upon the justice who convened the court of inquiry to conduct said court in such a manner as to provide the procedural safeguards guaranteed by" constitution).

Given the limited nature of courts of inquiry and given the type of permissible relief that may be afforded through a court of inquiry, I also note that the relief sought by the Relatives is inconsistent with the relief that is available through a court of inquiry. Generally speaking, courts of inquiry are called to determine whether there is probable cause to believe that a crime has occurred. *See, e.g., Ex parte Smith,* 383 S.W.2d at 402 (pertaining to court of inquiry called to investigate whether city official was illegally taking kickbacks); *In re Court of Inquiry,* 148 S.W.3d at 555 (addressing court of inquiry called to see if two police officers assaulted woman); *In re Court of Inquiry,* 326 S.W.3d 372, 372–73 (Tex.App.-Texarkana 2010, orig. proceeding) (regarding court of inquiry held to determine whether prosecutor fraudulently altered indictment); *Texas Dep't of Transp. v. Marquez,* 885 S.W.2d 456, 457 (Tex.App.-El Paso 1994, no pet.) (addressing court of inquiry called to determine whether public servants had illegally funded state programs in discriminatory manner); *cf. In re McClelland,* 260 F.Supp. 182, 183 (S.D.Tex.1966) (discussing court of inquiry that was held to determine whether there was probable cause to believe that probate court judge had been stealing from estates administered through his court). As mentioned previously, if the

presiding judge is convinced at the end of the inquiry that an offense has been committed, he may issue an arrest warrant for the offender. Tex.Code Crim. Proc. Ann. art. 52.08.

Although the Relatives assert in their petition that they are asking for the initiation of a court of inquiry to determine whether various government officials engaged in official oppression by failing to "adequately consider" the evidence of Willingham's innocence, the main thrust of their assertions is a challenge to Willingham's conviction that occurred in another appellate district and that became final years ago. *Beto,* 397 F.2d at 748 (noting primacy of conducting prosecutions in county or district in which crime was alleged to have occurred in order to aid in fair administration of justice and public's confidence in it); *see also Bitner v. State,* 135 S.W.3d 906, 907 (Tex.App.-Fort Worth 2004, pet. ref'd) (explaining that magistrates may not exercise judicial authority outside geographical limits of his jurisdiction). Moreover, that conviction was affirmed on appeal, *Willingham v. State,* 897 S.W.2d 351 (Tex.Crim.App.1995), *writ den'd,* 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995), and Willingham's writ of habeas corpus was denied, *Willingham v. Johnson,* No. 3:98–CV–0409–L, 2001 WL 1677023, 2001 U.S. Dist. LEXIS 21766 (N.D.Tex. Dec. 31, 2001), *aff'd Willingham v. Cockrell,* 61 Fed.Appx. 918 (5th Cir.Tex. 2003), *writ den'd, Willingham v. Dretke,* 540 U.S. 986, 124 S.Ct. 466, 157 L.Ed.2d 379 (2003). I can see nothing in the provisions of the code of criminal procedure governing courts of inquiry that could be read to authorize an otherwise impermissible collateral attack on a final and presumptively valid conviction.

Even though I believe that Judge Baird is attempting to convene an unauthorized and unorthodox proceeding, I do not be-

lieve that the legislature has given us mandamus authority in these circumstances. The government code specifically states that an appeals court "may issue all writs of mandamus ... against a: (1) judge of a district or county court in the appeals district; or (2) judge of a district court who is acting as a magistrate at a court of inquiry under Chapter 52, Code of Criminal Procedure, in the court of appeals district." Tex. Gov't Code Ann. § 22.221(b) (West 2004). Appellate courts have no authority "to issue a writ of mandamus against an official not prescribed by statute." *In re Hettler*, 110 S.W.3d 152, 154 (Tex.App.-Amarillo 2003, orig. proceeding); *see In re Lopez*, 286 S.W.3d 408, 410 (Tex.App.-Corpus Christi 2008, orig. proceeding) (explaining that appellate court's authority to issue writs of mandamus is limited to those situations described in government code).

In its opinion, the majority concludes that this Court has jurisdiction under subsection 22.221(b)(1) and, thereby, sidesteps the issue of whether a proper court of inquiry has been called. When reaching this decision, the majority lists the relief requested by the Relatives and notes that the Relatives sought a declaration "that Mr. Willingham was wrongfully convicted, and that all legal disabilities attaching to him or his survivors as a result of that conviction are forever removed." The majority then assumes that because the Relatives sought a declaration, the Relatives were pursuing a declaratory judgment cause of action. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008) (containing provisions of Uniform Declaratory Judgments Act). After determining that Judge Baird could only issue that type of declaration while acting in a judicial (not a magisterial) capacity, the majority reasons that we have mandamus jurisdiction because we have jurisdiction over district court judges in our appellate region.

For the reasons that follow, I believe that the majority's conclusion is erroneous. Although the majority correctly points out that the declaratory relief sought is not available through a court of inquiry, *see* Tex.Code Crim. Proc. Ann. arts. 52.01, .08 (West 2006) (limiting remedy available from court of inquiry to issuance of arrest warrant if court determines that "an offense has been committed"), they improvidently jump to the conclusion that the Relatives *must* have been seeking relief under the declaratory judgment act even after admitting that the Relatives do not characterize their petition or the relief they request as falling under the declaratory judgment act and even though the Relatives do not mention the declaratory judgment act, much less cite to any of the statutes or cases governing declaratory judgment actions. In fact, the Relatives repeatedly insist throughout the entirety of their petition that they are seeking relief through a court of inquiry. *See Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (explaining that it is not court's duty to "fashion a legal argument ... when [party] has failed to do so" and that it is inappropriate for appellate court to "speculate as to what [party] may have intended to raise").

Moreover, the fact that the Relatives requested a declaration as relief does not necessitate a conclusion that they were in fact attempting to seek a declaration under the declaratory judgment act or that they, thereby, invoked Judge Baird's power as a district court judge. Given the language in the Relatives' petition, a more reasonable inference to draw from the fact that the Relatives sought a declaration in their attempt to initiate a court of inquiry is that they simply made a mistake: they included in their prayer a form of relief that is not available through the procedure they at-

tempted to initiate. No higher purpose need be or should be inferred from the Relatives' miscalculation, and courts should be wary of converting the vehicle through which a party chooses to bring forth his claims in order to accommodate the relief that he requests. This seems particularly true given that the Relatives are pursuing a criminal matter and that the declaratory judgment act "is purely a creature of civil law" and "has no application in criminal proceedings." *See Ex parte Williams,* 786 S.W.2d 781, 782 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993) (stating that declaratory judgment act is "merely a procedural device for deciding cases with a court's jurisdiction rather than a legislative enlargement of a court's power"). Accordingly, the declaratory-judgment assumption that serves as the foundation for the majority's analysis cannot bear the weighty conclusion that the majority ill-advisedly places upon it.

In light of the fact that the Relatives are seeking relief through a court of inquiry and given that I do not believe that the relatives are or could be pursuing a declaratory judgment action in this case, I would conclude that we do not have jurisdiction over Judge Baird under subsection 22.221(b)(1) of the government code because Judge Baird is not being called to act in his judicial capacity.

I also do not believe that we have jurisdiction under subsection 22.221(b)(2). As discussed above, that provision authorizes appellate courts to issue writs against district court judges who are acting as magistrates "at a court of inquiry." Tex. Gov't Code Ann. § 22.221(b)(2). No proper court of inquiry has been called in this case because the matter has not been referred to the presiding judge of the administrative judicial district and because the presiding judge has not assigned a district judge to conduct a court of inquiry. *See* Tex.Code Crim. Proc. Ann. art. 52.01(a), (b). Even assuming for the sake of argument that Judge Baird is attempting (albeit improperly) to ascertain whether there is probable cause to believe that a crime has occurred, appellate courts have no mandamus jurisdiction over judges engaging in that preliminary determination.

This conclusion is supported by two court opinions addressing whether appellate courts have jurisdiction over individuals involved in calling a court of inquiry. When the Amarillo court of appeals was confronted with a similar situation in which it had to determine whether it had jurisdiction over individuals involved in the process of calling a court of inquiry but not actually presiding over the court of inquiry itself, the court concluded that appellate courts do not have mandamus jurisdiction over individuals unless the legislature expressly grants that power. *See In re Hettler,* 110 S.W.3d at 154–55. Specifically, the court decided that it had no jurisdiction to issue a mandamus against the "presiding judge of an administrative judicial region" because the legislature has not bestowed that power upon appellate courts. *Id.* at 154.

The El Paso court of appeals reached a similar result under a prior version of the government code. *See Marquez,* 885 S.W.2d at 459 (Tex.App.-El Paso 1994, no pet.). In that case, the court was charged with determining whether it had jurisdiction over district judges presiding over a court of inquiry. *Id.* At that time, the government code stated that appellate courts may only issue writs against district court judges. *See* Act of April 23, 1987, 70th Leg., R.S., ch. 69, § 1, 1987 Tex. Gen. Laws 174, 174. After determining that judges presiding over courts of inquiry are acting in a magisterial rather than a judi-

cial capacity, the court of appeals concluded that it did not have jurisdiction because section 22.221 did not list judges who are acting as magistrates as individuals over whom appellate courts may issue writs. *Marquez*, 885 S.W.2d at 459. The legislature subsequently amended section 22.221, but it only bestowed on appellate courts mandamus authority over judges actually presiding over a court of inquiry. *See* Tex. Gov't Code Ann. § 22.221(b)(2). Because Judge Baird is not presiding over a court of inquiry, I would conclude that we do not have mandamus authority in this case under subsection 22.221(b)(2). *See id.*

Because the government code does not authorize the issuance of a writ in the circumstances presented to us in this case, *see* Tex. Gov't Code Ann. § 22.221, I believe that we do not have jurisdiction to consider the writ, *see State v. Roberts*, 940 S.W.2d 655, 657 (Tex.Crim.App.1996) (explaining that issue of jurisdiction is "fundamental and cannot be ignored" and that courts may address issue sua sponte), *overruled on other grounds, State v. Medrano*, 67 S.W.3d 892, 903 (Tex.Crim.App. 2002); *see also Curry v. Wilson*, 853 S.W.2d 40, 45 (Tex.Crim.App.1993) (explaining that courts derive authority from constitution and state laws); *Drew v. State*, 765 S.W.2d 533, 535–36 (Tex.App.-Austin 1989), *pet. dism'd, improvidently granted*, 805 S.W.2d 451 (Tex.Crim.App. 1991) (per curiam) (stating fundamental proposition that court may only act when it has jurisdiction to do so). Accordingly, I respectfully dissent from the opinion by the majority and would deny the petition for writ of mandamus. *See In re Hettler*, 110 S.W.3d at 155 (dismissing petition for writ of mandamus after concluding that court did not have jurisdiction over official named); *see also In re Ramirez*, No. 03–10–00409–CV, 2010 Tex.App. LEXIS 6678, at *1 (Tex.App.-Austin 2010, orig. proceeding) (denying petition for writ of mandamus because person against whom writ was to issue did not fit into either of categories listed in subsection 22.221(b) of government code).